## SCHOFIELD v. HORSE SPRINGS CATTLE CO. et al.

### (Circuit Court, D. Montana. January 3, 1895.)

### No. 314.

**1. COURTS—DURATION OF TERM—ABSENCE OF JUDGE.**
    A term of court does not lapse or terminate before the limit set by law for its continuance, because of the absence of the judge assigned to hold it, on a day to which its session has been adjourned for convenience in the transaction of business, though no written order adjourning such term is made.

**2. EQUITY—PRACTICE—OPENING DEFAULT.**
    In support of a motion to set aside a default and a decree entered pro confesso, and for leave to defend, an affidavit of one of the defendants was submitted, stating that "as to a portion of the cattle mentioned in the complaint the said bank did not * * * have a lien thereon, * * * but the same are free from the mortgages," and that the affiant had fully stated his case to his counsel, and was advised that he had a good defense upon the merits. An affidavit of counsel was also submitted, stating that the defendant had stated his case as fully as he could, in the absence of certain papers, and that affiant believed that the defendant had a good defense upon the merits. *Held,* that such affidavits were too indefinite, and could not supply the place of a sworn answer, or an affidavit stating the facts constituting the defense, in the absence of which the motion to open the default must be denied.

This was a suit by John W. Schofield, receiver of the Albuquerque National Bank of New Mexico, against the Horse Springs Cattle Company, W. B. Slaughter, and D. C. Kyle. A decree pro confesso was entered against all the defendants. Defendant Kyle moves to set the same aside, and for leave to defend.

Toole & Wallace, for complainant.
Sanders & Sanders, for defendants.

KNOWLES, District Judge. This case is presented to the court on a motion to set aside a default and decree entered pro confesso therein. The bill of complaint was filed March 2, 1894. On the 5th day of April, said year, a subpoena was duly issued commanding the said Horse Springs Cattle Company, W. B. Slaughter, and D. C. Kyle to appear on the 7th day of May, 1894, and answer said bill. This subpoena was served on the defendant Kyle on the 10th day of said April, 1894. On the 5th day of April, 1894, an affidavit was filed showing the nonresidence of the defendants Slaughter and the Horse Springs Cattle Company. On the same date the court made an order requiring the said defendants Slaughter and the Horse Springs Cattle Company to appear, plead, answer, or demur on the said 7th day of May, 1894, and that this order be served, if practicable, upon said defendant the Horse Springs Cattle Company by the United States marshal of the district of New Mexico, and upon the said Slaughter by the marshal of the state of Kansas, that state appearing to be his residence. It appears from the return on this order that the marshal of New Mexico served the order personally on the defendant Slaughter in that territory on the 23d day of April, said year, and that the Horse Springs Cattle Company accepted service of the same on the 27th day of that month. On the 29th day of May,

1894, a default, on motion of counsel for plaintiff, was entered against all of the defendants. On the 29th day of June, 1894, a decree pro confesso was entered against all the defendants. On the 12th day of July, said year, the defendants Kyle and Slaughter came into court, and filed their motion to set aside the default and decree in this case. This motion is based upon the ground that defendants have a defense in said case upon the merits thereof, which, by accident, mistake, inadvertence, or excusable neglect, they were prevented from making within the time prescribed therefor by law and the rules of the court. In support of this the affidavits of D. C. Kyle and W. F. Sanders were filed.

The only point in connection with these affidavits which I will refer to is that part of the same which mentions the defense of the said defendants. The defendant Kyle states in his affidavit as follows:

"And affiant says, as to a portion of the cattle mentioned in the complaint herein, the said bank did not, and the said receiver did not, have, nor has either of them, a lien thereon, nor were nor are they the owners thereof, but the same are free from the mortgages mentioned in the said complaint, and are the property of this affiant and the said W. B. Slaughter; * * * that he has fully stated his case to his said counsel in New Mexico, and to his said counsel in Montana, and is advised by them and believes that upon the merits he, as well as said Slaughter, has a valid defense."

In his affidavit, W. F. Sanders states:

"That the said Kyle desired to and did employ affiant and his said partner to make a defense in said action, and has stated, as affiant believes, so fully as he can, in the absence of papers which are in New Mexico, or absent from Helena, the merits of his case; and as to each of the said cases affiant believes the said defendants, and each of them, have a defense upon the merits thereof, which by reason of delays incident to the mails, consequent upon strikes and otherwise, they did not make prior to the time of entry of default herein."

This case is further complicated from the fact that on the 3d day of July, 1894, this court adjourned to the 12th of said month. That on said last-named date, by a telegram in writing, the judge holding said court ordered said court adjourned until the 19th day of said month. On that day the said judge telephoned to the clerk of said court an order that said court be adjourned until the 6th day of August following. On the said 6th day of August the aforesaid motion was called to the attention of the court and argued. Owing to the doubt as to whether the court was legally in session, a few days subsequent it was adjourned. It is a matter of some importance in this case to know whether or not the court was in session on the 6th day of August. There are several decisions of the United States supreme court that hold that a federal court cannot set aside or vacate a judgment entered at one term at a subsequent term; that, as long as a term lasts, a court can modify or vacate a judgment or decree entered at that term, but as soon as the term ends the power of a court over its decrees entered during the continuance thereof terminates. Cameron v. McRoberts, 3 Wheat. 591; McMicken v. Perrin, 18 How. 507. If, however, a motion is made to vacate a judgment or decree at the same term at which it was rendered, and the motion is presented

to the court, and submitted, and taken under advisement, the court at a subsequent term, in ruling upon this motion, may vacate and set aside a judgment or decree. Goddard v. Ordway, 101 U. S. 745. The telegram to the officers of the court directing an adjournment from the 12th to the 19th of July may be considered an order in writing. A telegram has been classed as a memorandum in writing, within the statute of frauds. Thomp. Electr. §§ 476, 477. But a conversation or order sent by telephone cannot be properly termed a "written" conversation or order. The statute requires that a written order should be directed alternatively to the marshal, and, in his absence, to the clerk, to adjourn the court. Rev. St. § 672. The court was not adjourned by the written order of court on the 19th day of July. Did the term lapse for this reason? This is a question not free from difficulty.

The case of Railway Co. v. Hand, 7 Kan. 380, is directly in point, to the effect that, under the condition of affairs presented in this case, the term would not lapse. In that case a verdict was received and judgment ordered on Saturday, the 5th of December. The court adjourned until Monday, the 7th. The judge was absent until the 9th, when court was called. On the 8th a motion for a new trial was filed. It was held to have been filed during the term. In that case the court said:

"The term of court is fixed by law. Having once opened, it so continues till the term expires or an adjournment sine die is made."

In the case of Labadie v. Dean, 47 Tex. 90, the court said:

"The court convened and was duly organized at the time prescribed by law. When a court is organized and opened for a regular term, the term continues until it is ended by order of final adjournment, or until the efflux of the time fixed by law for its continuance. * * * The orders of adjournment of its sessions from day to day, or to a particular hour of the day, are mere announcements of its proposed or intended order of transacting the business to come before it during the term. But, certainly, the failure of the court to meet at the hour or on the day to which it had thus taken a recess can in no way affect or put an end to its term."

In the case of Barrett v. State, 1 Wis. 156, it was sought to set aside a verdict in a case because it was received during an adjournment of the court. The court adjourned at 6:30 o'clock p. m. to the next day at 8:30 a. m. Between these times the court received the verdict of a jury. It was held that the verdict was received in term time. In the discussion of the question, the court said: "But, for all general purposes, the court is considered as in session from the commencement till the close of the term." In this case it was shown that during the time when a court was adjourned, as it is called, the court had control over juries and their conduct; that grand juries could be in session, and witnesses could be examined and punished for contempt by the court for refusing to answer proper questions.

From these cases it would appear that these "adjournments," as they are called, of the court do not affect the term. This continues, when properly commenced, until a final adjournment, or perhaps, more properly, until the court declares it terminated, or it is ter-

minated by some law. In some states the length of a term is prescribed by law. It would seem, under the act of congress above referred to, it was thought it would be necessary to have the court adjourned from time to time, in order that the term might continue. If the above decisions are correct, this view of the law was not correct. I have concluded to hold that the term of court at which the decree was rendered in this case had not terminated on the 6th day of August, when the motion was presented to the court, argued, and taken under advisement. The practice in the federal courts has undergone several changes in regard to the time when a decree pro confesso should be entered, and under what circumstances it should be entered. The original practice seems to have been to attach the defendant for contempt for not obeying the subpoena and appearing and answering the complainant's bill. Subsequently the practice was to rule the defendant to answer. The order was served on the defendant, and if, within the time specified in the rule, no answer was filed, the bill was taken pro confesso. Pendelton v. Evans, 4 Wash. C. C. 336, Fed. Cas. No. 10,920. It seems, also, to have been the rule that a decree upon the bill, being taken as confessed, could not be entered at the same term at which the default was entered for want of appearance, but at the next term. O'Hara v. MacConnell, 93 U. S. 150. Rules 18 and 19 for the practice in courts of equity so provided at one time. On the 20th of October, 1878, these rules were amended by the supreme court. In accordance with rule 18, for said practice, the defendant was required to file his plea, demurrer, or answer to the bill in the clerk's office on the rule day next succeeding that of his appearance. In default, plaintiff may, at his election, enter an order as of course in the order book that the bill be taken pro confesso. Within 30 days after this order a decree might be had. 97 U. S. viii. In the case of Thomson v. Wooster, 114 U. S. 104–112, 5 Sup. Ct. 788, the supreme court said: "By our rules, a decree pro confesso may be had if the defendant, on being served with process, fails to appear within the time required." In accordance with the provisions of rule 18, after 30 days from that on which the order was entered in the order book that the bill be taken pro confesso the decree was entered, and I think properly. As far as the defendants Slaughter and the Horse Springs Cattle Company are concerned, they were served with the order of the court that required them to appear on a day therein named. When such an order is personally served, upon due proof thereof, in case the defendants fail to appear at the time named in the order, "it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication in such suit, in the same manner as if such absent defendant had been served with process within the said district." Supp. Rev. St. 84, 85.

The steps taken in the case, after the time at which the defendant named in the order should have appeared, were the same as in regard to Kyle, who was personally served. The decree having been entered at the April term of said court, it was proper to make the motion that the same should be set aside as it was during that term. There appears to have been no error in the steps taken before the

decree was entered. We then come to the question whether any ground is presented which would warrant the court in setting this decree aside. Allowing that there is shown excusable neglect or accident which prevented the defendants from appearing and making answer to the bill of plaintiff, we are confronted with the further question as to whether defendants show they have a meritorious defense to the course of action presented in the bill, for excusable neglect, surprise, or accident is not sufficient to warrant a court in setting aside a decree which it has entered. It must further appear that the defendants have a good and meritorious defense to the cause of action set forth in the bill. 1 Black, Judgm. § 347.

In the case of Goodhue v. Churchman, 1 Barb. Ch. 596, Chancellor Walworth said:

"It has repeatedly been decided in this court that a final decree which has been regularly entered upon a bill taken as confessed will not be set aside upon the mere affidavits of the defendant that he is advised he has a good defense on the merits. He must either state the nature and facts of his defense in the affidavit on which his application is founded, or he must move upon a sworn answer which he proposes to put in, so that the court can see what the defense is."

In the courts of Illinois it seems to be the practice to make the motion to vacate a decree entered upon a bill taken as confessed upon a sworn answer showing a meritorious defense which it is proposed to file. Norton v. Hixon, 25 Ill. 441; Scheneider v. Siebert, 50 Ill. 284; Burge v. Burge, 88 Ill. 164; Grubb v. Crane, 4 Scam. 153. The decisions of the highest courts of other states might be cited to the same effect. Recurring, now, to the affidavits in this case. Kyle, in his affidavit, says, as to a portion of the cattle mentioned in the complaint, the said bank did not and the said receiver did not have, nor has either of them, a lien thereon, etc. Nowhere in the affidavit is it stated what portion of the cattle are not subject to the lien of the bank. The statement that there is a portion of them that are not so affected is too indefinite. Then, we have this: "That he has fully stated this case to his said counsel in New Mexico, and to his said counsel in Montana, and is advised by them and believes that, upon the merits, he, as well as said Slaughter, has a valid defense." The affidavit of W. F. Sanders is that Kyle has stated his defense as fully as he can in the absence of papers which are in New Mexico, or absent from Helena, and he believes they have a good defense on the merits to the suit. While, in some states, there has been a practice which considers such advice of counsel, when the case has been fully stated to him, as entitled to be considered by the court in lieu of an affidavit stating the facts which show a defense to the complaint on the merits, I find that this is a rule of practice that has been applied to law cases, and not to cases in equity; that in equity, as a rule, such affidavits are not allowed, but an affidavit stating the facts constituting the defense, at least, must be presented. In some jurisdictions an answer must accompany the affidavit. Black, Judgm. § 347; Goodhue v. Churchman, 1 Barb. Ch. 596; Winship v. Jewett, Id. 173. It would appear that such a rule was proper. A court might be willing to take the sworn opinion of some of the counsel who are accus-

tomed to practice before it as to the merits of a defense, but the opinions of all counsel are not entitled to the same weight. It would be difficult, and often embarrassing, for a court to state why it would not like to take the opinion of some counsel upon such a subject. The rule, if established, should perhaps be a general one. Hence I think the rule established in New York is the best. If a person has not time to obtain the facts requisite to show a good defense, the court, and perhaps a judge in vacation, could grant the necessary time. This seems to have been the practice in one case in Illinois. For the reasons assigned, the motion to set aside the decree in this case and permit the defendants to answer is overruled.