EARL G. JONES, Plaintiff and Appellant, v. CHARLES C. Mc-
CLAUGHRY, Defendant and Appellee.

**COURTS:   Terms of Court—When Terminated—Ordering Recess—
1   Effect on Life of Session.** A term of court continues from the
legal convening thereof until (a) the commencement of a new
term or (b) adjournment *sine die.* An order declaring the court
''in recess until further order'' does not terminate the term. A
term of court may legally continue in one county even though the
judge is holding a term in another county. (See Sec. 232, Code
Sup. 1913.)

PRINCIPLE APPLIED:   The October term of the Adams
county district court legally convened. On October 28th, the
''court was declared in recess until farther order.'' Later, and
before the time of the commencement of the next Adams county
term, the judge returned from another county of the same dis-
trict where he had been holding court, reopened court in Adams
county, received a plea of guilty in a criminal cause, and pro-
ceeded to pass sentence. *Held,* the Adams county term was still
in session—that the court was not acting in vacation.

**COURTS:   Terms of—Adjournments Without Definite Date—Practice
2   Condemned.** The practice of adjourning court without definite
date for reconvening, while legal, is strongly disapproved.

**INDICTMENTS AND INFORMATIONS:   Filing Information With-
3   out Judge's Approval—Motion to Set Aside—Waiver.** Under the
county attorney information law, Ch. 188, Acts 34 G. A. (Ch.
12-A, Tit. XXV, Sup. Code, 1913), an information filed without
the approval of the judge (Sec. 5239-e, Sup. Code, 1913) may be
set aside provided the motion is made before plea is entered by
defendant. (Sec. 5239-m, Sup. Code, 1913.)

**CRIMINAL LAW:   Oral Sentence—Entry on Calendar—Record Entry
4   Omitted—Effect.** A sentence imposed under a plea of guilty and
a minute thereof entered on the judge's calendar is wholly with-
out effect as a judgment until actually entered on the record
book.

PRINCIPLE APPLIED:   Defendant being brought before the
court entered a plea of guilty to an information filed against him.

The only showing of judgment was this entry: "Judgment and sentence was then entered in the calendar and the court was declared at recess." *Held*, wholly ineffectual as a judgment and that the imprisonment thereunder was illegal.

**CRIMINAL LAW: Sentence Imposed—Failure to Enter Judgment—Effect—Remand.** A defendant is not entitled to a discharge from custody because of the failure to enter a judgment against him on his plea of guilty. The limit of his right is to be remanded to the custody of the sheriff of the county to await proper procedure under the information.

**CONSTITUTIONAL LAW: Proposal to Amend—Duality—General Related Scheme.** Two distinct "objects" must not be so intermingled in a proposed amendment to the constitution that the voter is unable to freely express his choice on each without reference to the other. The proposal to amend must be confined to one general related scheme. But the "object" is of the essence of the proposition, and the assembly has fair discretion in shaping the proposals. (Sec. 2, Art. 10, Const.) Proposal in question *held* not subject to the vice of duality.

PRINCIPLE APPLIED: The proposal (Sec. 15, Art. 5, Const.) sought to fix the membership of the grand jury at not less than 5 nor more than 15 *or* to authorize the assembly to provide for holding persons to answer for criminal offenses without a grand jury. *Held*, the "essence" of the proposal was the *mode of accusation* and the proposal was not subject to the vice of duality.

**CONSTITUTIONAL LAW: Amendment—Validity—Long-Continued Recognition.** The long-continued recognition (30 years) by all departments of the government of the validity of an amendment to the constitution is persuasive as to its validity.

**CONSTITUTIONAL LAW: Proposal to Amend—Entry on Journal—Vote Elsewhere—Identification.** The proposed amendment need not be entered on the journal immediately preceding the taking and entry of the yeas and nays thereon. It is sufficient if the proposal appears somewhere in the journal. It is sufficient, when the yeas and nays are taken and entered, that the journal shows that the particular house was voting upon the proposal in question.

PRINCIPLE APPLIED: The Senate Journal showed: (a) That one joint resolution containing four distinct propositions to amend was messaged from the House to the Senate, (b) that the four proposals were set out in full in the resolution, (c) that the

resolution was entered verbatim on the Senate Journal, (d) that later the committee reported favorably the ''House Joint Resolution by Dungan proposing amendments to the Constitution,'' (e) that later the Senate took up the ''Joint Resolution proposing amendments to the Constitution,'' (f) that a motion was made to strike out all but the first two resolutions and lost, (g) that a motion was then made to strike out the last resolution and lost, (h) that the rule for engrossment was then suspended and the yeas and nays taken and entered on the resolution *as a whole.* No other resolution for the submission of amendment or amendments to the Constitution was then pending in either house. *Held,* (a) the one entry of the proposals on the journal was sufficient and (b) the journal clearly showed *what* was voted on.

**CONSTITUTIONAL LAW: Several Proposals Under One Resolution —Separate Roll Calls.** Several proposals to amend the constitution may be agreed to in the same resolution and a separate calling and entry of the yeas and nays on each separate proposal is not required.

PRINCIPLE APPLIED:   (See preceding facts.)

**CONSTITUTIONAL LAW: Holding by Indictment or Information— Assembly's Power to Determine.** Sec. 15, Art. 5, Const., when construed with Sec. 11, Art. 1, Const., has no other effect than to permit the assembly to require accused persons to be held to answer for the specified higher offenses (a) solely by indictment by grand juries, *or* (b) solely by information without the grand jury, *or* (c) in part by indictment and in part by information.

**CONSTITUTIONAL LAW: General Operation of Laws—Information—Indictment—Term Time—Vacation—Difference in Procedure.** The ''uniform operation'' of general laws commanded by the constitution is furnished by every law which operates upon every person within the relations and circumstances reasonably provided. Reasonable discriminations may be made to meet differences in situation. (Sec. 30, Art. 3, and Sec. 6, Art. 1, Const.) So held under County Attorney Information Act.

PRINCIPLE APPLIED:   The County Attorney Information Act authorizes arraignment, plea and judgment in vacation. If the same defendant was charged wholly by indictment the same acts would be wholly in term time. (Secs. 5315, 5334, 5431, Code.) *Held,* difference in procedure, in view of the difference in situation, is authorized by the constitution, especially as the provisions for arraignment, etc., in vacation is for the benefit of the accused.

*Appeal from Adams District Court.*—HON. H. K. ADAMS, Judge.

SATURDAY, FEBRUARY 26, 1915.

THE facts appear in the opinion.—*Remanded.*

*Earl R. Ferguson, C. R. Barnes,* for plaintiff.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *A. Ray Maxwell,* County Attorney, for defendant.

LADD, J.—On the 4th day of November, 1913, a preliminary information, charging the defendant with the crime of kidnapping, was filed before a justice of the peace in Adams County, and on hearing, he was bound over to await the action of the grand jury. On the 8th day of November, following, the county attorney prepared and made oath to an information charging the defendant with the same offense and this was filed with the clerk of court and thereafter endorsed by his honor, H. K. Evans, a judge of the district court, approving the prosecution on information. The said judge had been presiding during the day at a term of court holden in Creston in Union County and came by railway to Corning, the county seat of Adams County, in the evening of that day at about eight o'clock and proceeded to the sheriff's office in the court house of said county and went through the regular form of convening court, all officers being there present. Thereupon defendant was brought before the court, fully informed of the charge made against him, and an attorney appointed to defend him. The proceedings are thus described in the record:

"Saturday, November 8, 1913. Court was called at 8:15 P. M. with H. K. Evans, as sole presiding judge. H. F. Hull, Sheriff, and F. D. Lawrence, Clerk.

"Case No. 5255, *State of Iowa vs. Earl G. Jones,* came up for hearing, and the defendant having filed his written plea of guilty, the court appointed C. W. Stanley as his attorney and informed the defendant of the nature of the

crime as charged in the information and asked the defendant if he had any reason why judgment should not be pronounced at this time to which the defendant replied in the negative. The judgment and sentence was then entered in the calendar and court was declared in recess until further called."

Mittimus was issued and the defendant taken to the reformatory at Anamosa. On May 15, 1914, he, as plaintiff, presented a petition to one of the judges of this court praying that a writ of habeas corpus issue and alleging as grounds therefor: First, that neither the court nor judge thereof had jurisdiction to sentence the plaintiff; (a) for that sentence was not pronounced at the place prescribed by Chap. 188 of the Acts of the 34th G. A.; (b) that the information was filed before being approved by the judges; (c) that no valid judgment was ever entered of record; (d) that the court was not in session but judgment entered in vacation; (e) that even if the court were in session, a written plea of guilty was not in compliance with the law. Second, that Sec. 15 of Article 5 of the Constitution was never adopted in the manner exacted by the Constitution and therefore the prosecution by information instead of by indictment was wholly unauthorized and void.

I. Counsel contend in behalf of the defendant that court was in session and that the judgment was not entered in vacation. It appears from the record that the October, 1913, term of court in and for Adams County convened at the time prescribed by the order of the judges. On October 28, 1913, the record shows that the "court was declared in recess until further order." There was no other session until the convening of court in the evening of November 8, 1913. It is argued that inasmuch as the adjournment was not to a day certain, the term lapsed as a matter of law. There is nothing in the Code so providing. On the contrary, the fair inference is that the term of court commencing on the

1. COURTS: terms of court: when terminated: ordering recess: effect on life of session.

day fixed by law continues until it expires by reason of the commencement of another term in the same county or because of having been adjourned *sine die*. The adjournment from day to day or to some distant day is simply for convenience in the transaction of business. Such adjournments do not suspend the functions of the court, for it is common practice for the grand jurors to continue in session during the intermissions of court, and for petit juries to continue in deliberation and the court to receive verdicts during the recesses incident to the adjournment from day to day. These juries are part of the court, performing important functions, and the court does not suspend its functions so as to be able to protect juries and enforce proper conduct on their part. "For all general purposes, the court is considered in session from the commencement to the close of its term." *Barrett v. State,* 1 Wis. 156. At common law, the whole period of a term was looked upon as a single day, and everything done at the term was regarded as done of that day. We need not point out what innovations statutes have made on this doctrine but we nowhere find it entirely abrogated.

In *Union Pacific Ry. Co. v. Hand,* 7 Kans. 380, 387, the trial court adjourned from Saturday until Monday and the judge did not appear until Wednesday, when a motion for new trial was overruled, and the supreme court held the trial court properly in session.

In *Labadie v. Dean,* 47 Tex. 90, it was said: "The sessions or sittings of the court during term are entirely within the discretion and control of the court. And its orders in respect thereto are intended for its convenience and the convenience of parties interested in its proceedings. Hence they may be altered, revoked, or annulled from time to time, as the exigency of the business to be transacted may require. The orders of adjournment of its sessions from day to day, or to a particular hour of the day, are mere announcements of its proposed or intended order of transacting the business to come before it during the term. But certainly the failure of

the court to meet at the hour or on the day to which it had thus taken a recess, can in no way affect or put an end to its term.''

In *Commonwealth v. Bannon,* 97 Mass. 214, the judge had been holding a term of court and on December 3rd, without adjourning, left to hold a term in another county. In the meantime, the grand jury continued their investigations and he returned on the 10th or 11th and received the report of the grand jury, returning several indictments, and it was insisted by those indicted that the term of court had lapsed because of an adjournment to a day not certain. Concerning this the court remarked: ''Such a result would certainly be contrary to the intent with which the course adopted by the judge was taken. It is not a case of neglect or omission to hold a term of court at the time appointed by law. The court was duly opened for the transaction of business, and it was allowed to continue without adjournment from day to day for the very purpose of enabling the grand jury to perform that portion of their duty which did not require the presence and action of the judge, while he was absent exercising judicial functions in another county. We know of no rule of law which requires during a continuance of a term after it has been properly begun, either that there should be daily adjournments of the court, or that the judge should remain in the town or county where the court is holden during the whole time that juries, either grand or petit, are engaged in deliberating and acting on matters properly submitted to their consideration. Such has never been the practice in this Commonwealth, and to require it would cause serious inconvenience, while it would produce no practical benefit in the administration of justice.''

In *State v. Martin,* 24 N. C. 101, where the objection was that the days of finding the indictment, arraignment and plea did not appear from the record, and it could have been known by no one that these were at the same term of court, it was said: ''The term of court is in legal contemplation as one

day; and although it may be open many days, all its acts refer to its commencement, with the particular exceptions in which the law may direct certain acts to be done on certain other days. It is seldom necessary that the day of any proceeding should appear in making up the record, distinct from that of the beginning of each term, although a minute may be kept of each day's doings. Nor is it necessary that there should be adjournments from day to day, after the term is once opened by the judge; nor, if there should be, that they should be recorded, in order to preserve the authority of the court to perform its functions. The court may, in fact, not adjourn during the whole term, but be always open; though for the convenience of suitors, an hour of a particular day, or of the next day, may be given them for their attendance. If the record state the time of doing an act, as the statement is unnecessary, so it is harmless surplusage, unless the day be beyond the period to which the term legally extends.''

In *State v. McBain,* 78 N. W. (Wis.) 602, the proposition urged was that unless a term of court is kept alive by adjourning from one day to another, the term of court ends; and with reference thereto, the court said: '':According to modern policy and methods a term of court, having duly commenced, continues until the court by an affirmative judicial act terminates it, or until the next term. . . . In deference to modern methods of business in court, involving in many jurisdictions the combination of equitable and legal proceedings, the term of court has come to mean a particular time within which there may be many sessions, while anciently it meant a single session, indeed, originally a single day, which, in order to meet the demands of business was enlarged in fact to several, although in theory, the single day extended over the whole sitting.'' And it was held that the term did not lapse in the absence of an adjournment to a day certain.

In *Green v. Morse,* 77 N. W. (Neb.) 925, the court said: ''An inspection of the record discloses no state of affairs raising precisely that question. What does appear is that the

October term was begun and held October 3rd; that on that day an order, apparently regular, made 'by the court' and signed by six judges, was entered, adjourning the term until the 1st day of November. It then appears that the decree appealed from was entered October 4th by the one judge who did not sign the order of adjournment. The record does not disclose that it contains all the orders affecting the adjournment and holding of the court. There is a marked distinction between an adjournment *sine die* of a term of court and those intermissions which inevitably occur during a term. A court has the inherent power during the term of suspending business, as occasion may require, from one hour or one day to another. In this respect there is no difference between an adjournment from one day to the next, and adjournment to a more distant day. In either case the term continues, and while during the intermission, the functions of the court are for some purposes suspended, still the court remains in existence and it is still term time. The judges do not, by such an order, lose all power of control over the sessions, and may revoke the order of adjournment, and reconvene before the time first fixed.'' See also *Palmer v. State,* 20 So. (Miss.) 156; *Hume v. Bowie,* 148 U. S. 245, 37 L. Ed. 438; *People v. Sullivan,* 21 N. E. (N. Y.) 1039; *Bowen v. Stewart,* 26 N. E. (Ind.) 168; *Cooper v. Granger,* 108 N. W. (Wis.) 193; *Commonwealth v. Howard,* 36 S. W. (Ky.) 556; *In re Dossett,* 37 Pac. (Okla.) 1066, where it is said, ''We are unable to say after a session of court is once regularly convened on the day fixed by law it can expire save by adjourning *sine die* or by operation of law. This is the rule and is too well settled to admit of controversy. In what manner can a session of court expire by operation of law if not adjourning *sine die?* Will the failure of the judge to attend on a distant day to which said court is adjourned lose the term? We think not.'' *Schofield v. Horse Springs Cattle Co.,* 65 Fed. 433; *In re Taylor,* 28 N. Y. Supp. 500; *In re Gannon,* 11 Pac. (Cal.) 240; *De Leon v. Barrett,* 22 S. C. 413; *Harrison v. Ins. Co.,* 90 Fed.

758; *E. Tennessee Iron & Coal Co. v. Wiggins,* 15 C. C. A. 510; *State v. Nash,* 83 Mo. App. 509; *Townsend v. Chew,* 31 Md. 247; *Garrard County Court v. McKee,* 11 Bush (Ky.) 234; *Eastman v. Concord,* 64 N. H. 263; 1 Enc. of P. & P. 245; 21 Enc. of P. & P. 631.

The language found in *Irwin v. Irwin,* 37 Pac. (Okla.) 548, is somewhat inconsistent with the rule laid down *In re Dossett,* 37 Pac. (Okla.) 1066. As suggested in the former, there is a possibility of abuse of the power exercised by a judge in keeping his court open until the following term, and in the absence of some apparent necessity therefor, the practice is not to be approved. Even when done, ample opportunity must be afforded those interested to be heard. *People v. Sullivan,* 115 N. Y. 185. In the case at bar, the sheriff and clerk of court as well as the judge were present, and every form observed in guarding the rights of complainant. There was no abuse of that reasonable discretion which necessarily must regulate the times at which the district court shall transact the business coming before it. Several early decisions are cited in which the beginning of a term of court in one county of a district was held to terminate that being held in another county. *Grable v. State,* 2 G. Greene 559; *Davis v. Fish,* 1 G. Greene 406; *Sheppard v. Wilson,* 1 Morr. 590.

This was on the theory that two terms of court could not be held in different counties concurrently by the same judge. The correctness of these holdings was questioned in *State v. Knight,* 19 Iowa 94, where a ruling was approved that the one term might be continued until a trial was completed, that in the neighboring county being adjourned to enable this to be done. This was said to be permissible owing to the change of statutes, and the decision was followed in *Cook v. Smith,* 54 Iowa 636; *State v. Stevens,* 67 Iowa 557, and *State v. Peterson,* 67 Iowa 564. In these cases, attention is directed to the fact that neither statute nor the judge's order fix the date at which a term of court shall end. *In re Estate of Hunter,* 84 Iowa 388, it appeared that the court, not having completed

the business before it in Johnson County on January 25th, adjourned until February 17th following, and in the meantime, the judge held a term in Iowa County in the same district. On February 17th, the court reconvened in Johnson County and its orders thereafter made were upheld, this court, speaking through GRANGER, J., saying: "Barring the fact that the same judge held the two terms, they are as entirely distinct and independent as are terms held in different districts. The fact that the same judge holds the two terms is not of importance. It is the holding of distinct and separate terms, each unaffected by the other."

In *State v. Van Auken*, 98 Iowa 674, the verdict was returned September 14th and the prisoner sentenced on the 28th. Court had adjourned from September 19th to the 23rd and from that day to the 28th. The judge was assigned to hold a term in the adjoining county of Hancock, beginning September 23rd, and did open court there September 24th, which continued until the 28th, and then adjourned until the 30th, the judge returning to complete the business of the term in Cerro Gordo County. The appellant insisted that jurisdiction had been lost for that the term had lapsed; but this court speaking through ROBINSON, J., observed "that the right to adjourn a court from time to time and to hold a term in one county during the time fixed for the holding of a term by the same judge in another county is well settled. . . . The court was not in session in the two counties at the same time, and it had the power to do what was done in this case when judgment was rendered." Even though the terms in two or more counties are assigned to the same judge, other judges may sit and courts be held in each at the same time. The circumstance, then, that a term of court may begin in one county is without significance in limiting the period of the term in another. It may be continued as the necessities of business or the convenience of the court or parties may require. The duty of directing the work of a term and fixing the time when particular business shall be transacted devolves

on the presiding judge, and unless there has been an abuse of discretion this court ought not to interfere. By appropriate orders, the dates when the several terms in each county shall begin are fixed, but their duration is not limited by such orders or by law, save in specifying the dates of the terms following. In this way the duration of a term is defined unless it is by order of court sooner adjourned *sine die*. In *Marengo Savings Bank v. Byington*, 135 Iowa 151, an adjournment generally and the departure for another county was held to be a final adjournment. In the case at bar, the court was declared at recess; that is, the sessions were suspended ''until further order,'' and convening court by the trial judge in the evening of November 8, 1913, was such further order, and we are of opinion the court was then in session and the proceedings before the court rather than the judge in vacation.

2. COURTS: terms of: adjournments without definite date: practice condemned.

Notwithstanding this conclusion, we are not to be understood as approving the practice of postponing sessions of court without fixing a definite time for convening again, as has been the custom prevailing in this state. Rarely will any advantage be derived from postponing subject to call. Convening without notice, when this is done, is likely to be misunderstood by the public. The expedition of business will not be aided thereby. No one can be certain under such a practice when causes in which he may be interested will be heard. If parties desire to try causes to the judge, between the regular sessions, this can be accomplished through an agreement to try in vacation. Without such an agreement, no judge would feel like forcing a trial arbitrarily at a time to be fixed in the future. If a prisoner chooses to plead between the regular sessions, the statute makes provision for this to be done in vacation. Indeed, had this course been pursued, the omission of a record of conviction probably would have been avoided. Though the court was in session and no prejudice resulted to the accused, the practice of postponing

court subject to call, though legal, ought not to be indulged in and is disapproved.

II. The information prepared and sworn to by the county attorney, in pursuance of Chap. 188 of the 34th G. A., was filed about noon of November 8, 1913, but was not approved

3. INDICTMENTS
AND INFORMA-
TIONS: filing
information
without judge's
approval: mo-
tion to set
aside: waiver.

by the trial judge until shortly after eight o'clock in the evening. Sec. 5 of that chapter, among other things, directs that ''the information, before being filed, shall be presented to some judge of the district court of the

county having jurisdiction of the offense, which judge shall indorse his approval or disapproval thereon. If the information receive the approval of the judge, the same shall be filed. If not approved, the charge shall be presented to the next grand jury for consideration.'' The contention of plaintiff is that, until approved, and the approval actually endorsed thereon, the information might as a matter of law not be filed. The point is not well taken. Sec. 13, Par. 5, makes this omission a ground of motion to set aside the information, and it is therein declared that unless so raised before plea is entered by the accused, the objection shall be deemed waived. No such motion was interposed; and for this reason, the point cannot be urged in this proceeding.

III. The most serious contention of counsel is that the record does not disclose that sentence was ever pronounced against defendant. It does not appear from the record book

4. CRIMINAL
LAW: oral
sentence: en-
try on calen-
dar: record
entry omitted:
effect.

of what offense he was accused or for what term he was sentenced. All said is that ''judgment and sentence was then entered in the calendar and the court was declared at recess until further called.'' What calendar

is referred to? Certainly not that in probate of the clerk. Sec. 3269, Code. Nor that printed for the bar. Sec. 3661, Code. Presumably, the judge's calendar was meant, but curiously enough, this is nowhere referred to in the Code save

in Sec. 3819, Code, where it is said: ''A minute of an offer and acceptance shall be entered upon the judge's calendar.'' The minutes on the judge's calendar form no part of the record and do not constitute a judgment. *Traer Bros. v. Whitman,* 56 Iowa 443; *Miller v. Wolf,* 63 Iowa 233. They are mere directions to the clerk and of no more significance than if orally made to him. *State v. Manley,* 63 Iowa 344; *Case v. Plato,* 54 Iowa 64; *Burroughs v. Ellis,* 76 Iowa 640. The record as contained in the record book kept by the clerk is the only proof that a judgment has been entered. *Callanan v. Votruba,* 104 Iowa 672; *King v. Dickson,* 114 Iowa 160. Neither the minutes of the judge's calendar nor a judgment form signed by the judge and not recorded constitute a judgment. Until actually spread upon the record, there is no enforceable judgment or one from which an appeal may be taken. *Kennedy v. Citizen's Nat'l. Bank,* 119 Iowa 123; *Thompson v. Accident Ass'n.,* 136 Iowa 557.

Many more decisions might be cited, but this is unnecessary; for if anything is well settled in this state it is that a judgment, to be of any validity, must be spread on the record book of the clerk. And in a criminal case, ''When a judgment of imprisonment, either in the penitentiary or county jail, is pronounced, an execution, consisting of a certified copy of the entry thereof in the record book, must be forthwith furnished to the officer whose duty it is to execute the same, who shall proceed and execute it accordingly, and no other warrant or authority is necessary to justify or require its execution.'' Sec. 5443, Code.

That the sheriff was not furnished a true copy of the judgment entry by the clerk, nor the defendant such a copy by the sheriff upon delivery of plaintiff at the reformatory, cannot obviate the conclusion that plaintiff's detention was without warrant of law for that no judgment had ever been entered against him consigning him to penal service.

IV. The consequence of the conclusion that judgment of imprisonment was not entered against plaintiff is not that he

be released, but that he be remanded to the custody of the

**5. CRIMINAL LAW: sentence imposed: failure to enter judgment: effect: remand.** sheriff of Adams County to await trial of the offense charged in the information, unless Chap. 188 of the Acts of the 34th G. A., authorizing presentment by information, be inimical to Sec. 11 of Art. 1 of the Constitution. That chapter in its first section provides that criminal offenses which theretofore might be prosecuted by indictment only may be

**6. CONSTITUTIONAL LAW: proposal to amend: duality: general related scheme.** prosecuted "either on indictment, as is now or may be hereafter provided, or on information as herein provided, and the district and supreme court shall possess and exercise the same power and jurisdiction to hear, try and determine prosecutions on information, as herein provided, for all such criminal offenses, to issue writs and process, and do all other acts therein, as they possess and may exercise in cases of like prosecutions upon indictment."

The third section requires the information to be endorsed "a true information," signed by the county attorney. Sec. 4 requires the county attorney to endorse or cause to be endorsed thereon the minutes of evidence and the names of witnesses he expects to call and to serve notice as in trials on indictments if he wishes to call others. Sec. 5 exacts that the information be sworn to by the county attorney before a district judge or clerk of court and be approved before filing by the district judge. There are also provisions relating to furnishing the accused a copy, amending the information, authorizing the same proceedings thereon as in case of indictment and judgment on written plea of guilty in vacation. An information such as herein contemplated was filed against plaintiff, charging him with the crime of kidnapping a young woman, which is made a felony by Sec. 4765 of the Code, and he was held thereunder when brought before the court and turned over to the defendant; and it is contended by his counsel that the entire chapter is void because contrary to

Sec. 11 of Art. 1 of the Constitution, prescribing how prosecutions shall be begun:

"All offenses less than felony, and in which the punishment does not exceed a fine of one hundred dollars, or imprisonment for thirty days, shall be tried summarily before a justice of the peace, or other officer authorized by law, on information under oath, without indictment, or the intervention of a grand jury, saving to the defendant the right of appeal; and no person shall be held to answer for any higher criminal offense, unless on presentment or indictment by a grand jury, excepting in cases arising in the army or navy, or in the militia, when in actual service, in time of war or public danger."

Though within the terms of a purported amendment to this section, it is contended by counsel for plaintiff that such amendment was not properly submitted to the electors of the state. With three others, it was adopted at the general election of 1884 and is in words following: "The grand jury may consist of any number of members not less than five, nor more than fifteen, as the general assembly may by law provide, or the general assembly may provide for holding persons to answer for any criminal offense without the intervention of the grand jury."

It will be noted that whereas only a prescribed class of offenses may be prosecuted by information under the original section, and all others must be by indictment of a grand jury, defined as will hereafter appear, to be not less than twelve nor more than twenty-three persons, under the amendment all may be prosecuted by information; and if prosecuted by indictment, this shall be by not less than five nor more than fifteen persons. The subject of both the original and amendment is the mode of accusation of those charged with the commission of public offenses, how this shall be done being a matter of detail. The particular criticism of the amendment is that it is in reality two amendments even though designated as one;

and, therefore, its submission as one was in violation of Sec. 2 of Art. 10 of the Constitution directing that "If two or more amendments shall be submitted at the same time, they shall be submitted in such manner that the electors shall vote for or against each of such amendments separately."

The importance of this provision was referred to in *Lobaugh v. Cook*, 127 Iowa 181. Its purpose is to exact the submission of each amendment upon its merits alone and thereby secure the free and independent expression of the will of the people thereon. Incongruous matter and that having no connection with the main subject is excluded and the evil of loading a meritorious proposition with another of doubtful propriety obviated. The elector in approving or rejecting cannot be put in a position where he may be compelled, in order to aid in carrying a proposition, to vote also for another which, if separately submitted, he would reject. But this does not mean that every proposed change shall necessarily be analyzed into its minutest component parts and these separately submitted. All intended is that but one subject be dealt with in a single amendment. "If," as said in *Lobaugh v. Cook*, "the amendment has but one object and purpose, and all else included therein is incidental thereto, and reasonably necessary to effect the object and purpose contemplated, it is not inimical to the charge of containing more than one amendment."

In *State v. Timme*, 54 Wis. 318, 11 N. W. 785, in speaking on this subject, the court said: "We think amendments to the Constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have different subjects and purposes in view. In order to constitute more than one amendment, the proposition submitted must relate to more than one subject and have at least two distinct and separate purposes not dependent upon or connected with each other. . . . The direction in the Constitution requiring separate amendments to be submitted separately has no efficacy in determining what

constituted two or more amendments; and as the word 'amend-
ment' is clearly susceptible of a construction which would
make it cover several propositions all tending to effect and
carry out one general object or purpose and all connected
with one object,' as well as the construction that every propo-
sition which effects a change in the Constitution or adds to or
takes from it is an amendment, the construction which has
been uniformly adopted by all the departments of government
for a series of years is entitled to great weight in settling
by judicial decision what construction should be placed on it.''

The authorities are collected in *Lobaugh v. Cook* and to
these may be added *McBee v. Brady,* 15 Idaho 761, 100
Pac. 97.

As observed in *Gabbert v. Ry.,* 171 Mo. 84, 70 S. W. 891:
''One principle running through these cases, and common to
them all, is that the mere fact that an amendment makes more
than one change in the Constitution does not make it more
than one amendment.''

This is well illustrated in *State v. Herried,* 10 S. D. 109,
72 N. W. 93. Sec. 3 of Article 14 of the Constitution of that
state provided that the state university and other educational
institutions supported wholly or in part by the state should
be under the control of six regents, appointed by the governor,
three retiring every second year. Sec. 4 provided that the
regents appoint five trustees for each institution under their
control, each trustee to hold office five years, one retiring annu-
ally. The trustees were to appoint members of the faculty
and provide for the management of the institution, appoint-
ments and removals to be subject to the approval of the board
of regents. Two propositions were submitted, one amending
Sec. 3 by reducing the number of regents to five and author-
izing their increase by the legislature to nine, and exacting
that their appointment be confirmed by the senate under such
rules and regulations as the legislature shall provide, and the
other repealing Sec. 4. These were numbered and submitted
together and the court held that, notwithstanding the num-

bering, they constituted but a single amendment, saying: "The question is presented, Does the resolution contain more than one amendment, within the meaning of the Constitution? It is contended with much apparent reason that two distinct objects were intended, namely, the abolition of the trustees, and a change in the number and powers of the regents; that those objects are independent of each other; that either might have been adopted without adopting the other; and that there are numerous reasons why an elector might have desired one change and not the other. The defect in this argument con-sists in substituting for the real object or purpose one of its incidents. Control of the state educational institutions is the subject to which the proposed amendment relates. Its purpose or object is to place such institutions under the control of a single board. The membership of such board, its powers, and the abolition of the local boards, are but incidental to and necessarily connected with the object intended. Hence we conclude that only one amendment was submitted."

As said, the subject involved in the amendment was the manner of presentment of a person accused of crime in court. Whether this were to be done by information or indictment was incidental to the main subject and calculated to accomplish the purpose of a formal accusation of the particular offense committed. Under Sec. 11 of Article 1 of the Constitution the accusation could be made by information in a limited class of cases and all others were required to be by indictment by grand jury. The term "grand jury" is not defined in the Constitution, and we necessarily recur to the principles of the common law and ascertain that it is an accusing body composed of not less than twelve nor more than twenty-three jurors, and such a jury evidently was contemplated. *English v. State*, 31 Fla. 340, 12 So. 689; *State v. Hartley*, 22 Nev. 343, 28 L. R. A. 33; *State v. Barker*, 107 N. C. 913, 10 L. R. A. 50; 20 Cyc. 1317.

The purpose of the amendment was to render possible prosecution for all offenses by information and so to do with-

out interfering with presentment by way of indictment and to interfere therewith only in reducing the number of jurors required. These changes were merely details in the matter of the presentment of alleged offenders and might well be effected by a single amendment, especially as this was of a single section of an article of the Constitution. While not more than a single subject is to be covered by an amendment, some latitude necessarily must be indulged in ascertaining the real subject touched and the purpose to be accomplished; and within proper limitations, the legislature may exercise its discretion in defining the subject matter to be included in a proposed amendment. This is necessarily involved in the power of proposing amendments to the Constitution conferred on that body and we are not ready to say that in reducing the number composing the grand jury and authorizing prosecution with-

7. CONSTITU-
TIONAL LAW:
amendment:
validity:
long-continued
recognition.

out intervention thereof, this discretion was exceeded. We are the more confirmed in this conclusion because of the recognition of the amendment as valid by all departments of government for nearly thirty years. In our opinion, there was no defect in its submission to the electors of the state.

V. Counsel for plaintiff also contend that the amendment was never entered on the journal of the senate nor the yeas and nays taken as is necessary under Sec. 1 of Article 10 of

8. CONSTITU-
TIONAL LAW:
proposal to
amend: entry
on journal:
vote else-
where: identi-
fication.

the Constitution, providing that "Any amendment or amendments to this Constitution may be proposed in either house of the general assembly; and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment shall be entered on their journals, with the yeas and nays taken thereon, and referred to the legislature to be chosen at the next general election."

"Entered" on the journal was held in *Koehler v. Hill*, 60 Iowa 543, followed by *State v. Brookhart*, 113 Iowa 250, to mean spread at length thereon. The object of spreading

on the record, as stated in *Koehler v. Hill,* is to "preserve the identical amendment proposed and in an authentic form which, under the Constitution, is to come before the succeeding General Assembly." The entry in the journal of the house of representatives is conceded to be without defect in this respect and that of the senate discloses that a resolution containing four amendments, including that in question, was messaged to the senate from the house as having been passed by that body and was then spread at length on the journal of the senate. Thereafter, the resolution described as "House Joint Resolution by Dungan, proposing amendments to the Constitution," was reported by the committee on constitutional amendments with the recommendation "that it be agreed to." Later on, the journal shows that:

"Joint resolutions proposing amendments to the Constitution of the State, were taken up and considered.

"Senator Russell of Jones moved to strike out all except the two first *resolutions,* which motion was lost.

"Senator Russell of Jones moved to strike out the *last resolution,* which did not prevail.

"The question being on the engrossment of the resolution, Senator Larrabee moved that the rule be suspended, and the resolution be considered engrossed, and read a third time now, which motion prevailed, and the resolution was read a third time.

"The question being, shall the resolution pass? The yeas were:

"(Setting out the vote showing 37 voting for, 5 votes against, and absent or not voting 8.)

"So the resolution passed and the time was agreed to."

No other resolution for the submission of amendment or amendments to the Constitution was then pending before either house, so that the inference that the resolution messaged from the house of representatives was that referred to cannot be avoided and the identity with that passed is put

beyond doubt. The motions of Senator Russell evidently had reference to ''amendment,'' in making use of the word ''resolution.'' It was not necessary to record the resolution again, it being sufficient that it with the amendments was spread upon the journal somewhere and was identified as such in entering the yeas and nays thereon, for this apprised the succeeding general assembly of precisely what had been done by way of proposing the amendments. The Constitution contains no requirement that the proposal of each amendment shall be voted on separately in either house. Sec. 29 of Article 3 of the Constitution relates to an act of the legislature and Sec. 1 of Article 10, in saying ''any amendment or amendments,'' may be proposed by either house and that if agreed to ''such proposed amendment shall be entered on their journals with the yeas and nays taken thereon,'' is complied with if such entry is of a resolution containing several amendments as though there were but one. Surely the larger number includes the less and each amendment contained therein may be said to have been entered and the yeas and nays taken thereon.

9. CONSTITU-
TIONAL LAW:
several pro-
posals under
one resolution:
separate roll
calls.

VI. Counsel for plaintiff next argue that the amendment did not itself amend the Constitution but merely authorized the legislature to do so and assuming this, argue that it cannot be done. Without inquiring into the consequence of such a course, it is enough to say that such is not a fair interpretation of its effect. The clause of the amendment thus criticised is, ''the general assembly may provide for holding persons to answer for any criminal offense without the intervention of the grand jury.'' The effect of this when construed in connection with Sec. 11 of Article 1, heretofore quoted, was to exact the presentment for all offenses where the penalty exceeds thirty days' imprisonment or a fine of one hundred dollars by the indictment of a grand jury, unless for such offenses or some of them the legislature pro-

10. CONSTITU-
TIONAL LAW:
holding by
indictment or
information:
assembly's
power to de-
termine.

vide some other method of holding persons to answer, and if so, this may be done without a grand jury. Of course, this change might well have been accomplished by substituting this amendment for a portion of the above section; but that was not essential to its amendment if, when read together, they are not necessarily contradictory. As seen, the amendment when read with the original merely authorizes legislation in pursuance thereof, as it might properly do, and is not vulnerable to the criticism urged.

VII. A person held under indictment must be arraigned in open court and on plea of guilty can be sentenced by the court only. Secs. 5315, 5334, 5431 Code. Sec. 14 of Chapter 188 of the 34th G. A. provides that: "An accused prosecuted on information may, in vacation, be arraigned by any judge of the district court, and, in vacation, be required to plead to the information before any such judge, but arraignments can be made and pleas required, in vacation, only before such judge sitting in chambers at the usual place of holding court in the county in which the information was filed, or to which the cause may be sent on change of venue. The proceedings with reference to arraignments and the taking of pleas, in vacation, shall be signed by the judge and filed with the clerk and entered at length in the records of the court with the same force and effect as if made and entered in term time."

11. CONSTITU-
TIONAL LAW:
general operation of laws:
information:
indictment:
term time:
vacation: difference in
procedure.

Sec. 15: "Judgments may be rendered in vacation on written pleas of guilt of the offense charged, or of any degree or grade thereof, or of any offense included therein, with the same force and effect as though rendered in term time, which written plea of guilt, together with the judge's entry of judgment in reference thereto, shall be forthwith filed with the clerk and entered at length in the records of said court, and after such entry, be executed as in case of judgments on indictments, but judgments in vacation can only be rendered by a judge of the district court sitting in chambers at the usual

place of holding court in the county where the information was filed, or to which the cause has been transferred on change of venue.''

The plaintiff contends that because of these differences the sections quoted are in violation of Sec. 30 of Article 3 of the Constitution declaring that in all cases ''where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state.'' And also of Sec. 6 of Article 1: ''All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens.''

It is not contended that such violation would result from authorizing prosecution of one person by indictment and of another for the same offense by information. The thought is that the statute, in authorizing arraignment, plea and judgment in vacation for an offense for which if one were indicted he must have been arraigned, have pleaded and been sentenced in term time, involves a discrimination without differences in situation justifying it. The defect contended is in the classification. Thus two persons are accused of the commission of a single offense. An information is lodged against the one and the other is indicted. The former is arraigned before a judge in vacation, required to plead and may be sentenced; while in the case of the latter, all this is required in open court. The mere statement discloses the difference in situation. If indicted, court is in session and there is then no reason for not arraigning the accused, taking his plea and sentencing him in open court and by that tribunal. If the prosecution is by information, it is to be filed prior to the impanelling of the grand jury in term time or vacation, and so the arraignment, plea and sentence is then authorized. The difference in the situation of the accused seems to be such as to justify the difference in the statutes in the respects mentioned. Moreover, the arraignment and entry of plea by the accused as prescribed by statute was designed for the purpose of enabling

those accused of crime to enter on such penal service as denounced by statute without delay and is, therefore, for their benefit. This is optional with them; for arraignment always may be waived, and a plea of not guilty or of former conviction or acquittal, if entered subsequently, may be changed so that even though arraigned, the accused need not proceed to trial until term time, and even though he would plead guilty, he is not required to do so until court is in session. So it is optional with him whether he will be sentenced in term time or vacation and what is required prejudices him in no manner either as to time of sentence or in his right to trial before an impartial jury.

The act contains nothing inconsistent with the provisions of the Constitution quoted. There appears to be no reason for not prosecuting most of the offenders of this state on information. The right to do so under the Constitution as amended has been vindicated by the decisions of many states. See *Re Wright*, 13 L. R. A. (Wyo.) 748, 31 Am. St. 94; *State v. Tucker*, 51 L. R. A. (Ore.) 246; *State v. Kyle*, 56 L. R. A. (Md.) 115; *Rowan v. State*, 30 Wis. 129, 11 Am. R. 559.

The cases generally are collected in 22 Cyc. 187. The court, by directing that grand jurors be not summoned, and the county attorneys, by making use of information as authorized, could relieve such jurors of service and avoid an unnecessary expense to the public in many, if not most, of the counties of the state. Possible abuses are obviated by exacting the approval of information by the district judge. Possibly, to be entirely efficient, the statutes should be amended so that grand jurors be not summoned unless this be ordered by the judge, and requiring the county attorney to present by information in all proper cases instead of leaving this matter to his discretion. However this may be, we discover no error in the proceedings save in that no judgment sentencing plaintiff to imprisonment was entered, and because of this omission he is remanded to the custody of the sheriff

of Adams County to be held under the information and dealt with according to law.    Ordered accordingly.—*Remanded*.

All Justices concur.