W. L. LOBAUGH v. JOHN W. COOK, JR., Clerk, and J. M.
    CHRISMAN and J. C. CHITTY, Trustees of Richland
    Township, Story County, Appellants.

**Constitutional amendments:** CONSTRUCTION: SUBMISSION.  The leg-
1  islature may submit to the people in a single amendment sev-
   eral proposed changes in the constitution, provided they all
   relate to and are incident to the main purpose of the change
   and essential to its accomplishment.

**Same.**  The provisions of the amendment to the constitution
2  adopted at the general election in 1904, relating to a change
   from annual to biennial election of state, county and district
   officers, do not apply to school and municipal elections.

**Same.**  The provisions of the biennial election amendment of 1904
3  relating to the office of Chief Justice of the Supreme Court
   pertain to the general subject of elections, so that the in-
   corporation of that provision in the single amendment was
   not in violation of the constitutional provision requiring the
   separate submission of two or more amendments.

*Appeal from Story District Court.*—HON. W. D. EVANS,
                          Judge.

TUESDAY, APRIL 4, 1905.

THIS case was submitted on an agreed state of facts, in pursuance of chapter 13, title 21, of the Code. The parties stipulated that on the 17th day of January, 1905, a majority of the board of trustees of Richland township, in Story county, designated Woodman Hall, in Fernald, as the place " at which shall be held the general election " in November, 1905, and directed the clerk to post the usual notices, and that, unless restrained, the board would rent said hall, and the clerk post the notices, and do all else required by law preliminary to such election. The plaintiff, as a taxpayer of the county, as well as the township trustee whose term first expires, asked that the trustees and township clerk be enjoined from renting the hall and posting the notices, thereby incurring unnecessary expenses, for that by the terms of an amendment to the Constitution adopted at the general election in 1904 there will be no general election in the year A. D. 1905. The district court, entertaining this view, enjoined the officers as prayed, and they appeal.—*Affirmed.*

*E. M. McCall* and *J. L. Parrish,* for appellants.

*H. E. Hadley,· E. H. Addison, G. M. Titus,* and *Carr, Hewitt, Parker & Wright,* for appellee.

LADD, J.—The right to the relief granted is questioned on but one ground, and that involves the validity of the so-called biennial amendment to the Constitution. The last General Assembly (Acts 29th Gen. Assembly page 199) directed the submission to the electors of an amendment to article 12 of that instrument by adding thereto section 16, in words following:

Sec. 16. The first general election after the adoption of this amendment shall be held on the Tuesday next after the first Monday in November in the year one thousand nine hundred and six, and general elections shall be held biennially thereafter. In the year one thousand nine hundred and six there shall be elected a Governor, Lieutenant

Governor, Secretary of State, Auditor of State, Treasurer of State, Attorney General, two Judges' of the Supreme Court, the successors of the judges of the district court whose terms of office expire on December 31st, one thousand nine hundred and six, State Senators who would otherwise be chosen in the year one thousand nine hundred and five, and Members of the House of Representatives. The terms of office of the Judges of the Supreme Court which would otherwise expire on December 31st, in odd numbered years and all other elective state, county and township officers whose terms of office would otherwise expire in January in the year one thousand nine hundred and six, and members of the General Assembly whose successors would otherwise be chosen at the general election in the year one thousand nine hundred and five, are hereby extended one year and until their successors are elected and qualified. The terms of offices of Senators whose successors would otherwise be chosen in the year one thousand nine hundred and seven are hereby extended one year and until their successors are elected and qualified. The General Assembly shall make such change in the law governing the time of election and term of office of all other elective officers as shall be necessary to make the time of their election and terms of office conform to this amendment, and shall provide which of the judges of the Supreme Court shall serve as Chief Justice. The General Assembly shall meet in regular session on the second Monday in January, in the year one thousand nine hundred and six, and also on the second Monday in January in the year one thousand nine hundred and seven, and biennially thereafter.

This had been proposed by the preceding General Assembly, and was ratified by a majority of the electors at the general election in November, 1904. An amendment substantially like it was held in *State v. Brookhart,* 113 Iowa, 251, not to have become a part of the Constitution, owing to the omission of the House of the Twenty-Eighth General Assembly to enter the same upon its journal in conformity with the requirements of section 1 of article 10. The contention now made is that the General Assembly failed to comply with section 2 of the same article, in that the amend-

ment submitted as one in fact contained three distinct and independent amendments to the Constitution: " (1) A change from annual to biennial elections; (2) a change in the office of Chief Justice from the short-term judge, or one of two short-term judges, to any one of six, and he to be chosen by the Legislature; and (3) a proposition to have all elections, including school and municipal elections, at one time." Is this criticism well founded? Section 2 of article 10 directs that, " if two or more amendments shall be submitted at the same time, they shall be submitted in such manner that the electors shall vote for or against each of such amendments, separately." The evident purpose of this section is to exact the submission of each amendment to the Constitution on its merits alone, and to secure the free and independent expression of the will of the people as to each. The importance of this cannot be too strongly stated. It excludes incongruous matter and that having no connection with the main subject from being inserted, and thereby obviates the evil of loading a meritorious proposition with an independent and distinct measure of doubtful propriety. The elector, in voting for or against, is limited to ratifying or rejecting the proposition in its entirety, and cannot be put in a position where he may be compelled, in order to aid in carrying a proposition his judgment approves, to vote for another he would otherwise reject.

II. The amendments contemplated are those to the Constitution, and not necessarily to any particular article or section thereof. The change proposed may affect many

1. CONSTITU-
TIONAL parts, and yet constitute but a single amend-
AMENDMENTS:
submission. ment, or there may be several independent amendments to a single article. Some difficulty has been experienced elsewhere in determining what shall be included and must be excluded to avoid any infraction of the rule requiring a separate submission. Modifications such as are merely incidental to the main purpose and object sought to be attained are to be included, as essential to the preserva-

tion of the symmetry and harmony of the Constitution as a whole.  Otherwise great confusion would be possible, from the adoption of some and rejection of other incidental changes necessary to accomplish the purpose proposed.  It follows that, while an amendment can have but one main object, it should include such additional provisions as are essential, upon its ratification by the people, to render it consistent with other portions of the Constitution.  Under the guise of accomplishing this, however, it cannot be loaded with matters not related to or necessarily connected' therewith.  The right reserved by the people of voting on amendments separately would be violated by such a course.  In considering a like provision in the Constitution of Wisconsin, the Supreme Court of that State said:

This provision can have but two constructions:  First, it may be construed as is contended by the learned counsel, who contends that the amendment under controversy was not properly submitted; that every proposition in the shape of an amendment to the Constitution which, standing alone, changes or abolishes any of its present provisions, or adds any new provision thereto, shall be so drawn that it can be submitted separately, and must be so submitted.  Such a construction would, we think, be so narrow as to render it practically impossible to amend the Constitution, or, if not practically impossible, it would compel the submission of an amendment which, although having but one object in view, might consist of considerable detail, and each separate provision, though all promotive of the same object and necessary to the perfection and practical usefulness thereof, if adopted as a whole, in such form that a defeat of one of its important matters of detail might destroy the usefulness of all the other provisions when adopted.  Take the case as presented by the amendment under consideration.  The learned counsel admits that the proposition to change from annual to biennial sessions so intimately connected with the proposition to change the tenure of office of members of the Assembly from one year to two years that the propriety of the two changes taking place, or that neither should take place, is so apparent that to provide otherwise would be

absurd. And yet it is insisted that the two changes are two separate amendments, within the meaning of the constitutional provision above quoted, and must be submitted separately. If they must be submitted separately, why must they? Certainly they should either both be defeated, or both adopted. Why, then, should the people be permitted or compelled to vote upon each separately? Certainly no good could result from a separate submission which is not equally as well and better accomplished by submitting them together as one amendment, and the separate submission might result in the absurdity of the ratification of the one, and the rejection of the other. This illustration is, to my mind, almost conclusive that no such intention was entertained either by the framers of the Constitution, or by the people who adopted it. We think amendments to the Constitution, which the section above quoted requires shall be submitted separately, must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment, the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes, not dependent upon or connected with each other.

*State v. Timme,* 54 Wis. 318 (11 N. W. Rep. 785). The Supreme Court of Mississippi, in *State v. Powell,* 27 South Rep. 927 (48 L. R. A. 652), perspicuously stated the test:

Whether an amendment is one or many clearly must depend upon the nature of the subject-matter covered by the amendment. If the propositions are separate, one in no manner dependent on the other, so that a voter may intelligently vote for one and against the other — one being able to stand alone, disconnected wholly from the others — then such amendments are many, and not one; are severable, and not a unit; are complete each in itself, and not each a part of an interdependent scheme.

See, to the same effect, *Gabbert v. C., R. I. & P. R. R. Co.,* 171 Mo. 84 (70 S. W. Rep. 891); *State ex rel. Morris v. Secretary of State,* 43 La. Ann. 590, 659 (9 South. Rep. 776); *State v. Herried,* 10 S. D. 109, 118 (72 N. W. Rep.

93).   As observed in *State v. County Judge,* 2 Iowa, 280, with reference to the provision requiring but one subject to be included in an act of the Legislature, " the unity of object is to be looked for in the ultimate end, and not in the detail or steps leading to the end." If the amendment has but one object and purpose, and all else included therein is incidental thereto, and reasonably necessary to effect the object and purpose contemplated, it is not inimical to the charge of containing more than one amendment. We do not understand counsel for appellant to question the rule as stated, save in insisting that the mending of the broken places in other parts of the Constitution shall be limited within the narrowest bounds of strict necessity, or, in their language, " that an amendment may contain, in addition to the main proposition, such additional provisions as are absolutely necessary to mend any place broken by reason of the adoption of the main proposition, but that the power to mend the broken places would not authorize the reconstruction of such section, or the ingrafting upon it of any provision that should have the effect to do more than cure the ambiguity or inconsistency occasioned by it." That the necessity of the incidental change must exist, in order to justify its inclusion with the main proposition we entertain no doubt; but, in determining the character of such change, some discretion is, of necessity, allowed the General Assembly. Thus if the effect of the change proposed is to render inoperative some particular part of the Constitution, and this may be obviated or remedied in any one of several ways, the General Assembly may include any one reasonably adapted for that purpose, and not out of harmony with other portions of the fundamental law. In other words, the Legislature, in providing the correction of a consequential defect, should not be limited to any specific mode, but may exercise its sound discretion in selecting that which seems best, providing no more is included than is reasonably essential to effect the purpose intended. This much is involved in the power granted to

propose amendments. In the words of the Wisconsin case: "The Legislature, under the Constitution, has a discretion, within the limits of the rule that the propositions submitted must relate to one subject, of determining what shall be submitted as a single amendment, and they are not compelled to submit as separate amendments the separate propositions necessary to accomplish a single purpose."

III. The Constitution provided for the general election of state, district, county, and township officers annually, "on the Tuesday next after the first Monday in November."

2. SAME.

Section 7, article 2. And the evident and controlling object of this amendment is to so change the Constitution that such general election shall occur in even-numbered years only. But appellants assert that, in addition to this, it effectuates two other separate and distinct objects, and therefore in fact contains, as heretofore stated, three amendments, instead of one. Such objects are said to be expressed in the following sentence: "The General Assembly shall make such change in the law governing the time of election and term of office of all elective officers as shall be necessary to make the time of their election and terms of office conform to this amendment, and shall provide which of the Judges of the Supreme Court shall serve as Chief Justice." Counsel argue that the effect of the first clause is to require the General Assembly to so change the existing laws as that officers of school districts, cities, and incorporated towns shall be elected at the general election. The language employed cannot be fairly so interpreted. In the first place, the amendment purports to relate to general elections only as prescribed by the Constitution, not to those fixed by statute to occur in the spring of the year, and this clause should be interpreted with reference to the object sought to be effectuated. In the next place, all that precedes this clause relates to state, district, county, or township officers, and, in referring to " all other elective officers," those of the same kind or class were intended. This

is according to elementary rules of interpretation, and is put beyond doubt by the limitation, " as shall be necessary to make the time of their election and terms of office conform to this amendment." No change whatever in the terms or times fixed for the election of school or municipal officers was necessary for this purpose. On the other hand, the terms of certain state, county, and township officers, such as railroad commissioners, members of the boards of supervisors, and township trustees, are three years; and some change in the terms of office or times of electing these was essential, to harmonize the law with the provision for biennial general elections. Appellants concede that some change in terms of office might be necessary, but insist that this could not be true as to time of election. This expression has reference to the time of electing particular officers — as, when the term expires in an odd-numbered year, whether a successor shall be chosen the year previous. The remedy may be by making the term two or four years, instead of three years, or by fixing the time of electing successors a year before when terms expire in odd-numbered years. When so read, this entire clause is a necessary part of, and incidental to, the change from annual to biennial elections, and in no sense an independent measure.

  IV. The remaining contention relates to the selection of a Chief Justice of this court. Formerly the court was composed of three members, and these were " classified so 3. Same. that one Judge shall go out of office every two years; and the Judge holding the shortest term of office under such classification shall be Chief Justice during his term and so on in rotation." Section 3, art. 5, Const. The term of office is six years, and, as there are six Judges, the term of one expires every year. The Judge serving the last year of his term has always been regarded as the Chief Justice. Under the amendment the terms of two Judges will expire every even-numbered year, and the section referred to be rendered ineffectual in designating who shall fill

the office. It is not a mere ambiguity, as seems to be thought by counsel for appellants, for it is not a doubt or uncertainty as to which of two is entitled to the office that is created. The effectiveness of the mode of determining the presiding officer of the court is entirely destroyed. There being no " shortest term," no one is singled out as the official intended. In effect, it operates to repeal that part of the section relating to the mode of determining which Judge shall be Chief Justice, and, had a provision to that effect been included, no one could have said it was not germane to the main subject. That this situation might have been produced by the General Assembly in adding another Judge, whose term would expire at the same time as some one of the six, can make no difference. It is enough that the amendment would destroy the provision of the Constitution designating who shall be the incumbent of an office created by the Constitution to justify mending the breach by the substitution of some other adequate provision in its stead. To accomplish this, it was proper to take into consideration future contingencies as well as the present situation. Constitutions are seldom amended, and then only upon great consideration. The changes, when made, are prospective in character, and adopted with reference to future legislation. When viewed from this standpoint, the contention of counsel for appellants that no more should have been inserted in the amendment than sufficient to indicate which of the two judges having the shortest term to serve shall act as Chief Justice is entirely too narrow. For all that we know, the General Assembly may add another Judge to the members of the court, making seven, in which event the terms of three would expire at the same time, and a provision as to the selection of which of two shall serve prove entirely ineffectual. Moreover, there is no more reason for insisting upon this mode than some other equally efficient. The suggestion that the people, in adopting the Constitution, originally intended to favor the Judge who had served longest for Chief Justice, is with-

out merit, as the section quoted had no such effect.   Length
of service was not the criterion, but rather, the time yet to
serve.   The evident policy was that one of those elected
Judges of the Supreme Court should serve as Chief Justice,
and the clause merely determined which by designating him
" holding the shortest term." This policy has not been
changed, for under this amendment the General Assembly
can do no more than provide which of the Judges elected as
such shall serve in that capacity.   Every one of the Judges,
and no other, will be eligible to the office, the same as before
the ratification of the amendment.   Only the manner of de-
termining which shall serve has been changed, and that was
rendered necessary by the change to biennial elections.   Sup-
pose a different mode of designating the Chief Justice had
been submitted as a separate amendment.   Its adoption
would have been of little concern, if at the same time the
biennial election amendment had lost, while, if the latter
had carried, and the former been lost, there would have re-
mained no constitutional mode of determining who would
be incumbent of this important office.   In view of this con-
tingency, and the reasons previously stated, we think the
provision was properly included in the amendment, and that
the General Assembly, in proposing it, in lieu of the former
method of determining who should serve as Chief Justice,
acted within the discretion conferred by the Constitution in
authorizing it to submit amendments for the ratification of
the people.   The authorities cited relate to amendments
which differ so radically from that in the instant case that
they furnish little or no aid by way of analogy.   They are
in accord, however, as to the principles which should con-
trol, and when these are fairly applied, there can be no doubt
as to the conclusion which should be reached.   Otherwise
provisions for so amending the Constitution as to meet the
changing conditions and needs of the people will have been
so hedged about with difficulties as to render them prac-
tically inoperative.

Other questions raised in the district court are not argued.

The decree, in effect, adjudging the amendment an integral part of the Constitution, was right, and is *affirmed.*