H. U. MATHEWS, Appellant, v. DAN W. TURNER, Governor, et al., Appellees; S. A. HAISLET, Intervener, Appellant.

No. 40900.

MAY 5, 1931.

Leonard Simmer and Strock, Sloan & Herrick, for appellant.

Ben J. Gibson and Stipp, Perry, Bannister & Starzinger, for appellees.

W. L. Bliss, Chas. M. Dutcher, Emmet Tinley, B. F. Swisher, James A. Devitt, LaMonte Cowles, W. A. Smith, Dana Waterman, J. E. E. Markley, David W. Stewart, for appellees.

Fred H. Free, for intervener and appellant.

John Fletcher, Attorney-general, Amicus Curiae.

PER CURIAM.—A joint resolution of the two houses of the general assembly of the state of Iowa proposing an amendment to the constitution relating to the incurring of a state debt and the issuance and sale of state bonds, and containing other provisions, was adopted by the forty-third general assembly and passed to the next general assembly for its action thereon. By a similar joint resolution, the forty-fourth general assembly also approved the proposed amendment to the constitution, and, by a further joint resolution, made provision for a special election to be held June 16, 1931, at which the electors may vote upon the question of the adoption or rejection of such proposed amendment. The joint resolution providing for the holding of a special election directs the governor, at least thirty days before the date of said election, to issue his proclamation in relation thereto, and to transmit a copy thereof to the sheriff of each county, and also directs the secretary of state, not less than twenty days preceding the date of said election, to transmit to the auditor of each county a certified copy of the proposed amendment to the constitution, together with a sample ballot to be used at said election, and directs the sheriff of each county to give at least ten days' notice of the holding of said election by causing a copy of the proclamation of the governor to be published in a newspaper of general circulation printed in each of the respective counties.

This action is brought by a resident and taxpayer, who is

also the owner and driver of a motor vehicle in this state, to enjoin the governor and the secretary of state from performing the duties and functions above stated in calling said special election.

S. A. Haislet, who is also a resident and taxpayer of the state of Iowa, filed a petition in intervention in the action, setting up the invalidity of House File No. 154, enacted by the forty-fourth general assembly, under the terms and provisions of which it is assumed that the plaintiff instituted this action.

The appellee appeared and filed a motion to dismiss the petition of the plaintiff upon the ground that it appeared upon the face thereof that he is not entitled to the relief sought for the reason that the proposed constitutional amendment complies with all of the provisions of the constitution of the state of Iowa pertaining to its amendment, and that it is not in violation of any of the provisions of the constitution of the United States.

Intervener withdrew his petition of intervention and filed a motion to dismiss the petition. The motion of appellees was sustained and the motion of the intervener overruled. Plaintiff's petition was dismissed. Both the plaintiff and intervener elected to stand upon their respective pleadings and judgment was accordingly entered against them as stated.

██ House File No. 154 (Chapter 223, Laws of the Forty-fourth General Assembly) purports to confer upon any taxpayer the right to intervene in an action of this kind on condition that he join either the plaintiff or the defendant in the case. It is our conclusion that the alleged intervener in this case has no standing in this court, and his propositions are not entitled to any consideration for the reason, first, that the only method of intervention is by petition which the intervener filed in this case and afterwards withdrew. When he did so, he ceased to be a party to the case. Second, the purported statute authorized him, as such intervener only to join as a party plaintiff or defendant. He did neither in this case, and under these conditions, he can present nothing to the court for consideration. We therefore treat the plaintiff as the sole appellant.

This leaves before us only such questions as are raised between the original parties to the action, and under the issues thus framed, no question whatever is raised with reference to the jurisdiction or power of this court to pass upon the matters

before us. This question not being raised, we express no opinion thereon, and reserve any pronouncement as to the validity or constitutionality of said House File No. 154, or as to the jurisdiction or power of the court to entertain this appeal.

By joint resolution the forty-third general assembly approved of a proposed amendment to the Constitution and duly referred it to the forty-fourth general assembly, which also approved it, and ordered it submitted at a special election to be held on June 16, 1931.

Proceeding under an act of the forty-fourth general assembly known as House File No. 154, the appellant, as a taxpayer, instituted the instant suit to secure an injunction restraining the governor and secretary of state from taking the necessary steps for the due proclamation and holding of said election. The trial court denied the relief sought.

The proposed amendment provides as follows:

"Section 1. Notwithstanding the provisions of Article VII or any other provision of the Constitution of Iowa, the state may, by act of the general assembly, contract an indebtedness not to exceed one hundred million dollars ($100,000,000.00) for the improvement of highways and for the payment or retirement of county primary road bonds and bonds issued to refund county primary road bonds; and for such purposes may issue bonds and provide ways and means for the payment of the same, and may pledge the credit of the state therefor. Such act shall pledge to the payment of such bonds and interest thereon such rates or amounts of motor license fees and/or gasoline or other motor fuel license fees as may be determined by the general assembly to be sufficient to meet both principal and interest as they mature and accrue; and shall provide for the levy, imposition, collection and pledge of such general property tax as may be required to supply the deficiency, if any, between the amount of principal and interest due on the bonds during any year or years and the funds produced by said pledged license fees during such year or years; and it shall be a sufficient statement of such tax that such act direct the executive council annually to compute such deficiency, if any, and fix the rate necessary to produce such amount. The provisions of such act pledging funds and levying taxes for the payment of principal and interest of bonds issued thereunder shall be irrepealable

so long as any of such bonds are outstanding, unpaid and un-called. Such bonds may be issued from time to time on such terms as the general assembly shall by law provide; but each bond shall become due and payable not more than twenty years after its date.

"Sec. 2. After bonds in the total principal sum of one hundred million dollars ($100,000,000.00) shall have been issued hereunder, all power to create an indebtedness hereunder shall cease.

"Sec. 3. No funds derived from the sale of any of the bonds provided for in Section One (1) of this Article XIII shall be used in the improvement of any other highways until after the following highways shall have been improved in the following manner: (a) by grading, draining, bridging and pav-ing:"

Here follows a detailed description of some forty-six pri-mary roads.

The proposed amendment then provides:

"(b) By grading, draining, bridging and surfacing with gravel, sand clay, or other type of surfacing: all other primary roads.

"Nothing herein shall prohibit the changing of the number of any road or part thereof, or the changing of the location of any primary road between the cities and towns named herein.

"Sec. 4. Any law adopted by the general assembly author-izing the issuance of bonds under this Article XIII shall pro-vide that the principal of all county primary road bonds and bonds issued to refund county primary road bonds, outstanding when said law becomes effective, shall be paid, as such bonds mature or become subject to call, from the proceeds of the state bonds. Upon the issuance of the first state bonds under such law the authority of the counties to issue county primary road bonds shall cease."

Appellant contends that said proposed amendment violates the provisions of Article X of the Constitution, which is in part as follows:

"Section 1. Any amendment or amendments to this Con-stitution may be proposed in either House of the General As-

sembly; and if the same shall be agreed to by a majority of the members elected to each of the two Houses, such proposed amendment shall be entered on their journals, with the yeas and nays taken thereon, and referred to the Legislature to be chosen at the next general election, and shall be published, as provided by law, for three months previous to the time of making such choice; and if, in the General Assembly so next chosen as aforesaid, such proposed amendment or amendments shall be agreed to, by a majority of all the members elected to each House, then it shall be the duty of the General Assembly to submit such proposed amendment or amendments to the people, in such manner, and at such time as the General Assembly shall provide; and if the people shall approve and ratify such amendment or amendments, by a majority of the electors qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments shall become a part of the Constitution of this State.

"Sec. 2. If two or more amendments shall be submitted at the same time, they shall be submitted in such manner that the electors shall vote for or against each of such amendments separately."

In Lobaugh v. Cook, 127 Iowa 181, we said:

"The evident purpose of this section is to exact the submission of each amendment to the Constitution on its merits alone, and to secure the free and independent expression of the will of the people as to each. The importance of this cannot be too strongly stated. It excludes incongruous matter and that having no connection with the main subject from being inserted, and thereby obviates the evil of loading a meritorious proposition with an independent and distinct measure of doubtful propriety. The elector, in voting for or against, is limited to ratifying or rejecting the proposition in its entirety, and cannot be put in a position where he may be compelled, in order to aid in carrying a proposition his judgment approves, to vote for another he would otherwise reject."

Our first inquiry, then, is: Does said proposed amendment contain two or more amendments as prohibited by Section 2 of Article X of the Constitution?

At the outset it is obvious that authorities from other states

can be of little assistance in the solution of this problem, for the simple reason that no case has been cited, and doubtless none can be found, wherein an amendment containing the substance of the proposed amendment has been construed by the courts. We are therefore required to follow general rules of construction and apply them to the particular language of the amendment under consideration. There was a definite and plain purpose in adopting Section 2 of Article X. Section 1 of Article X makes provision for submitting a proposed amendment to the vote of the electorate of the state. By Section 2 of Article X it is expressly provided that if two or more amendments shall be submitted at the same time they shall be submitted in such manner that the electors may vote for or against each of such amendments separately. This was in order to make for clarity, certainty, and precision in submitting to the voters such a vastly important thing as an amendment to the fundamental and supreme law of the state. It was placed in the Constitution in order to prevent confusion in the minds of the voters, and perhaps above all to prevent a situation where a voter might favor one part of a proposed amendment and be opposed to another part, and yet be induced to vote for the objectionable part in order to secure adoption of the part he favored. It is not always a matter of easy determination whether or not a proposed amendment in fact contravenes the provisions of said Section 2 of Article X and contains two or more amendments. In considering amendments under constitutional limitations, such as are contained in said Section 2 of Article X, the courts have in a general way held that an amendment does not contravene such a provision if the amendment contains but ''one object or purpose'' which is clearly stated therein. Such is the general statement of this court in Lobaugh v. Cook, supra. But this general language must be considered in connection with the particular amendment under consideration. In the Lobaugh case there was but one object in the amendment, namely, a change in elections. The other matters embodied in the amendment were not only pertinent and germane, but essential to the change in the election. There were not two or more amendments included in the amendment considered in the Lobaugh case upon which the voter might have voted in the affirmative as to part, and upon one or more of which he might have voted in the nega-

tive. No such segregation was reasonably possible in the amendment under consideration in said case. We held that the entire amendment pertained to but one object and purpose, and was in fact *but one amendment*, and not two or more amendments.

If the amendment under consideration does not contain two or more propositions upon which a voter might desire to vote differently, then it does not contravene the provisions of Section 2, Article X, and is not unconstitutional.

It is argued that if the proposed amendment has "but one object or purpose" it is valid, even though it may contain many different propositions, if they are related to said "one object or purpose." Such, however, is not the provision of Section 2, Article X. It provides that if two or more amendments are submitted *at the same election* they shall be submitted separately, and this is true even though they may pertain to the same general object or purpose. An entire code of laws cannot be embodied in an amendment to the Constitution merely because said laws pertain to "one object or purpose."

By way of illustration, education of the youth of the state is "one object or purpose." A constitutional amendment would not be valid, however, which would declare that a schoolhouse shall be erected at every two miles upon certain described highways throughout the state, that schools shall be maintained a certain number of months of the year, that certain salaries shall be paid, that certain textbooks shall be used, that directors shall operate the schools, that the cost of the buildings shall not exceed a named sum, and shall be paid from funds derived from taxation, from federal aid, and from fines. Could a court uphold such an amendment on the ground that it had "one object and purpose," namely the education of the youth of Iowa? Under such a proposed amendment a voter might favor any one or more of the propositions embraced in the "one object or purpose" of education and be opposed to others. It was to obviate just such a situation that Section 2 of Article X was adopted.

Again, by way of illustration, Article IX of the Constitution pertains to "Education and School Lands." The Code Title XII, also pertains to "Education." It contains 682 sections of school laws. Suppose that an amendment to the Constitution should provide that: "Notwithstanding Article IX of the Constitution, or any other article of the Constitution, the following

amendment is added to the Constitution," and then set forth the 682 sections embraced in the 42 chapters of the school laws of Iowa. Such an amendment would have "but *one* object and purpose," namely education, but would contain many distinct amendments. A voter might favor some of the propositions contained in such an amendment and oppose others. How, then, could he vote on such amendment intelligently?

Section 2 of Article X must be held to mean what it expressly states, that if two or more amendments are submitted at *one* election they must be submitted separately. If an amendment contains propositions that could be submitted at *separate elections*, then they must be submitted as separate amendments.

What was the "object or purpose" of the proposed amendment?

We may take judicial notice of the history of events in the state, and especially of the statutes of the state and the decisions of this court. The extra session of the forty-second general assembly passed a law known as "the Road Bond Act." It provided for the issuance of state bonds in the sum of $100,-000,000, and for a time limit thereon in excess of the term of twenty years as fixed by Article VII of the Constitution. This court held said act unconstitutional because it permitted a state indebtedness in excess of $250,000, as limited by the Constitution, and because the period of indebtedness was not limited to twenty years. See, State v. Executive Council, 207 Iowa 923. After said decision the proposed amendment was adopted by the forty-third general assembly. The object and purpose of the amendment is to permit the issuance of $100,000,000 of state bonds covering a series of years, notwithstanding the constitutional limitation to the issuance of state bonds of $250,000, which must be paid in twenty years. Such a proposition might easily have been embodied in a tersely stated amendment and every voter of the state could have intelligently voted for or against it. But the proposed amendment does not merely submit to the voters the one proposition of extending the constitutional limit of state debts as to amount of indebtedness and time of payment, but it attempts to incorporate into the Constitution itself, in large measure, the very legislation that was enacted by the extra session of the forty-second general assembly. It runs far afield from

the "one object or purpose" of amending the Constitution as to amount of state indebtedness and time of payment thereof.

Let us see if two or more amendments are embodied in the proposed amendment. At the outset it appears plain that a voter might be in favor of amending the Constitution so as to permit a state indebtedness of $100,000,000 to improve certain roads, and still be opposed to the provision that the general assembly shall by law provide that all county primary road bonds outstanding when such law becomes effective shall be paid out of said funds. Two voters might both favor the bond issue of $100,000,000, and one favor its use to take up county bonds and the other be opposed to such use. How can it be said that there are not two distinct propositions before the voters? How can the voters express themselves as to the two propositions under the form in which this amendment is proposed? Under this amendment, no matter how laudable and proper its purpose may be, it does deprive the voter of expressing a choice between two methods of disposing of the proceeds of state bonds.

Again, the amendment provides that: "Upon issuance of the first state bonds under such law, the authority of the counties to issue county primary road bonds shall cease." A voter might favor the issuance of state bonds to the extent of $100,000,000 and be opposed to incorporating into the state constitution an absolute prohibition upon the counties of the state from ever issuing county primary road bonds. The proposition to place such a prohibition upon the counties is a separate and distinct amendment from one prohibiting a state indebtedness of $100,-000,000. Such a proposal could readily be submitted to the voters as a separate amendment to the constitution. When it is incorporated in an amendment to permit state indebtedness not to exceed $100,000,000 it places before the voter two distinct propositions. He is denied the right to vote for one proposal and against the other. "Shall the state issue bonds to the amount of $100,000,000?" is one proposition. "Shall counties be prohibited from issuing county primary road bonds?" is another and entirely distinct proposition. Because a voter favors putting one in the constitution, it does not follow that he favors incorporating the other therein.

Two proposed amendments are thus presented, notwithstanding Section 2 of Article X. This cannot be done.

It must be remembered that we are dealing with a Constitution, not temporary legislation.

Again, this amendment, if adopted, would become a part of the fundamental law and would be permanent unless subsequently amended, but it is perfectly obvious that the provision regarding the issuance of bonds to the amount of $100,000,000 for the purpose of building roads is temporary in its character. It can not, like the great principles and rights declared in the constitution, last as long as the state shall endure. The $100,-000,000 would be exhausted within a comparatively short time and this provision of the Constitution would utterly cease to function. But the provision prohibiting the counties from issuing county primary road bonds would be permanent and not temporary. It would be a perpetual prohibition against the counties' *ever* issuing any primary road bonds. The exigency might easily arise that after this $100,000,000 had been spent by the state a county or counties might find it very necessary to issue primary road bonds. They could not do so unless the Constitution were again amended. It is apparent that the two propositions are entirely separate and distinct. The permanent prohibition upon the counties is in no way properly germane to the authority of the state to issue $100,000,000 of state bonds for a comparatively temporary purpose.

Thus two distinct propositions are presented to the voter, one pertaining to a change in the Constitution affecting a temporary matter of the state, and the other a permanent and lasting limitation and prohibition on the counties. Clearly two amendments to the fundamental law are proposed and the voter can not choose one and reject the other.

Again, the proposed amendment contains a provision purporting to designate certain roads for improvement, with the proceeds of the bonds provided for in the amendment. The amendment describes these roads by an existing number, and by the names of cities and towns between which said roads pass. The ordinary voter would readily understand that the funds would be used upon said described roads as previously established. If residing upon such an established road, the voter might readily favor such a proposal; but the amendment also provides that "nothing herein shall prohibit the changing of the number of any road or part thereof, or the changing of the

location of any primary road between the cities and towns named herein.'' Here again the voter is faced with two distinct propositions, one to improve the primary roads as now located and designated, and another providing that someone may change the location of any primary road between the cities and towns named. The voter may favor one of these propositions and oppose the other, but he has no choice. He must accept both or none. The farmer living on an established primary road between two towns might be disposed to favor the amendment in the belief that the road would be paved past his farm, and the farmer living a mile or two away on another road between the same towns might be disposed to favor the amendment in the belief that the primary road would be changed and pass by his place.

It is proposed to put this amendment into the fundamental law, where it will remain permanently, unless repealed or modified by the method prescribed in the Constitution. That it may be deemed incongruous to place such a provision in the Constitution of a state is not sufficient ground for the court to hold it to be unconstitutional. If it does not contain two amendments it does not transgress Section 2 of Article X. We therefore limit our decision to the one proposition that the proposed amendment does contain more than one amendment, and hence, if adopted, would be invalid under Section 2 of Article X.

Article VII of the Constitution limits state indebtedness to $250,000. Section 15 of Article III requires that all bills having passed both houses shall be signed by the speaker and president of their respective houses. Section 16 of Article III provides for veto by the governor. Section 26 of Article III of the Constitution provides when laws shall go into effect. Section 29 of Article III provides that every act shall embrace but one subject, etc.

The proposed amendment, if adopted, will write into the Constitution of this state that, ''notwithstanding the provisions of Article VII, *or any other provision of the Constitution of Iowa,*'' the state may, by act of the general assembly, contract an indebtedness, etc. Is this intended to repeal the existing constitutional provisions regarding the enactment of statutes in so far as they affect the act contemplated by the amendment? The very possibility of such an inquiry suggests the uncertainty

of the proposed amendment at this point. A voter might well favor an amendment to the constitution permitting an extended limit of state indebtedness, and hesitate to provide that *"notwithstanding \* \* \* any other provision of the Constitution of Iowa"* the general assembly may by an act do all the things described in the proposed amendment.

We deem it not inappropriate to observe that we are solely concerned with the interpretation of the Constitution, and this decision has not the slightest reference to the merits or demerits of the proposed amendment.

We are compelled to hold that, if adopted by the voters, it would be invalid for the reasons stated, and therefore a writ of injunction should have been issued by the trial court enjoining the governor and secretary of state from submitting said amendment to the voters at a special election.

As previously stated, adjudicated cases from other jurisdictions are of little value to us in determining the question involved, as none of them deals with an amendment containing such provisions as are embodied in the one under consideration, and many of the constitutional provisions of other states regarding amendments are not like ours, as, for example, that of Missouri, Article XV, Section 2, which provides that "no proposed amendment (to the Constitution) shall contain \* \* \* more than one subject and *matters properly connected therewith."* (Italics are ours.)   See State ex rel. Highway Commission v. Thompson, 19 S. W. Rep. (2d Series) 642 (Mo.).

As bearing somewhat on the question, however, see, Lobaugh v. Cook, supra; Jones v. McClaughry, 169 Iowa 281; McBee v. Brady, 100 Pac. 97 (Idaho); Lozier v. Alexander Drug Company, 99 Pac. 808 (Okla.); State ex. rel. City of Bethany v. Allen, 186 Mo. 673, 674, 85 S. W. 531; McBryde v. Montesano, 7 Wash. 69, 72, 34 Pac. 559; Utter v. Moseley, 100 Pac. 1058 (Idaho); Power v. Robertson, 93 So. 769 (Miss.).

The judgment of the district court is reversed and decree may be entered in the trial court or in this court, as appellant shall elect, and in accordance with this opinion.—Reversed.

FAVILLE, C. J., and DE GRAFF, ALBERT, KINDIG, WAGNER, GRIMM, JJ., concur.

STEVENS, EVANS, MORLING, JJ., dissent.

STEVENS, J. (dissenting)—I concur in the holding of the majority on the question of the validity and constitutionality of House File No. 154 and also in what is said on the question of jurisdiction and the rights of the intervener.

On the question of the validity of the proposed amendment, upon the authority of the following cases, my conclusion is contrary to that of the majority and I respectfully dissent therefrom: Lobaugh v. Cook, 127 Iowa 181; Jones v. McClaughry, 169 Iowa 281; People v. Prevost, 134 Pac. (Colo.) 129; State v. Jones, 64 So. (Miss.) 241; Gabbert v. C. R. I. & P. Ry. Co., 70 S. W. (Mo.) 891; People v. Sours, 74 Pac. (Colo.) 167; State v. Bd. of Commsrs., 87 Pac. (Mont.) 450; Hammond v. Clark, 71 S. E. (Ga.) 479; Martin v. Marion Co., 74 S. E. (S. C.) 983; State v. Brantley, 74 So. (Miss.) 662; Gottstein v. Lister, 153 Pac. (Wash.) 595; State v. Wetz, 168 N. W. (N. D.) 835; McBee v. Brady, 100 Pac. (Ida.) 97; State v. Powell, 27 So. (Miss.) 927; State v. Alderson, 142 Pac. (Mont.) 210; Crawford v. Gilchrist, 59 So. (Fla.) 963; State v. Mason, 9 So. (La.) 776; Power v. Robertson, 93 So. (Miss.) 769; State v. Thompson, 19 S. W. (2d Ser.) 642 (Mo.)

I am of the opinion that the proposed amendment is not invalid for any of the reasons stated in the majority opinion. I think that each and all of the provisions therein contained are germane to the main purpose and object thereof, and therefore valid.

I am authorized to say that Mr. Justice Evans and Mr. Justice Morling join with me in the dissent.